Good afternoon, ladies and gentlemen. We have six cases on our calendar this afternoon. Three government employee cases, a trademark case, and two patent cases. Two of the employee cases are being submitted on the briefs and will not be argued. The first one is a government employee case, Simons v. OPM, 05-3245, Mr. Klimaski. Good afternoon. May it please the Honorable Court. Mark Simons petitions this Court to reverse a decision of the Merit System Protection Board concerning his efforts to secure an early retirement pension from the Federal Service, to which he was qualified. The essential facts of the case are that Mr. Simons had worked for the Central Intelligence Agency and earlier for the military for over 27 years. The agency, in the fall of 1998, notified him that he was eligible for an early retirement program that they were putting into effect that fall. He met those eligibility requirements and made the request for retirement. When did he make that request? He made that request in October of 1998. What's the evidence for that? The evidence we only have was a copy of a letter he sent to the agency. Now, the difficulty with the evidence in this case is that a lot of it is inferential. Evidence is everything? Yes. The letter that I have dated October 1998. I should say, at least it's uncontradicted that the evidence shows that he made a request in October of 1998 for early retirement. He claims he was offered early retirement. Yes, that they sent an offer to all eligible employees of the CIA at that time that they could apply for early retirement. Mr. Classy, picking up on Judge Lurie's last comment, do we have in the record the document showing the offer going out to the employees? No, we don't. We made a Freedom of Information Act request for that. It was denied by the agency. We asked for a subpoena, and that was denied by the MSPB judge. Subsequent to our filing of this appeal, and after the record was closed, the agency has now sent us a copy of that document showing that there was an early retirement period from, I believe, September of 1998 to the end of December. But that's not in the record. And who was eligible for this early retirement? He was. It's undisputed that if this offer was made, he would be someone who would be eligible. That's correct. He had over 20 years of service, and he was over 50. He was 53 years old and had 27 years of service. But isn't that limited to someone who is either riffed or separated involuntarily except for cause and charges of misconduct? That's correct. However... In other words, he doesn't qualify in either of those grants. Those were not applicable because at the time of the early retirement opportunity, he was not under any threat of involuntary separation. The involuntary separation occurred over a month after the early retirement program had ended. He had made his application in October. He was not separated from the agency until the end of January of the following year. So at the time he made his application... Assuming your interpretation of evidence, we have an application for retirement which is dated what? With a question, have you previously filed any application for retirement? And the answer is no. He had not filed an application with OPM, and he understood that's how he was supposed to answer the question. I don't have his thoughts as to that, but he did not make any application to OPM. And I think the OPM argues that he was required to file with OPM. However, the law does not state that. The law states that he's supposed to, in an early retirement application, apply to the agency. And he did apply to the agency. He had sent the letter. They did not ask him to do anything further. He was told he met the requirements. He said, I want to retire. They told him how much he would get, and then they didn't do anything. The letter you're referring to, is that the one at 30 of the joint appendix? I mean, I guess the copy we have isn't signed, but it's purportedly a letter from Mr. Simons dated October 14th of 1998. That's correct. We asked the agency for a copy of that. They refused to give us anything concerning his personnel records. However, the OPM or the agency has not offered anything to contradict this document. They don't challenge that he sent this letter. Yeah, but isn't it a problem for you that the letter doesn't say, I accept your offer of early retirement, except it says, I request consideration? I can't say that it's the most artfully drafted letter in the world, but I believe that his request for consideration is sufficient to trigger them to continue with what essentially is a ministerial function, that they said, okay, he wants to retire. He meets the qualification. We retire him. I think there's a case where, I'm all of a sudden blanking on the name, where someone applied for early retirement from the agency, thought he had his 20 years, age 50. He retired. Subsequently, OPM reviewed the matter and found out he only had 19 years, 8 months, and he was then taken off the retirement list. The question was whether or not that he had no right to the back pay, but in that simply that case shows that it's an operative matter. The agency is the one that makes the determination initially, and they had made the determination that he's retirement eligible. All he had to do was notify him, the agency, that he wanted to retire, which he did. They're then supposed to process it. We have no explanation from the agency why they refused to process his request from October through January. At that time, even though he had not been removed, was some kind of a removal action in process between October and the end of January? I believe he was only under investigation. The first time he was notified that he was going to be removed was three days after he was removed. The removal date was January 27th, and I believe he was notified of the removal by a letter dated February 1st, 1999. He was not told that he was being removed, and at the time he made his application, he was on suspension under investigation, but not— So in the October of 1998 timeframe, he's under suspension while the investigation is pending. Then he gets a notice of removal, presumably the result of the investigation, at the end of January of 1999? That's correct. And so at the time he made his application, he was not removed from service and was not under notification that he was going to be removed. So the operative facts were all there. The agency has refused to give us any information. The MSPB judge refused to issue the subpoena for the appropriate documents. We believe the documents that we submitted in this matter are sufficient to show that he was entitled to an early retirement and should get the early retirement. The agency had—OPM and the agency had an obligation if they had contradictory evidence to submit it to the MSPB, and they didn't do that. There's no contradictory evidence in the record to show that he did not make a timely application or that he wasn't qualified for the early retirement. And if the agency doesn't want to submit documents for whatever reason it wants, then it stands by its silence. In this case, the evidence, we believe, is sufficient to support Mr. Simon's application for early retirement. He should have gotten it. You mean a person is entitled to an annuity if the agency doesn't respond to him? If he's qualified, the law says he should get the retirement.  The document—yes, we do. In the record, there is his form, which is pages 20 through 25, which show that he has 27 years plus of service. So he has a 27-year service. It states what his birth date is, so he's over 20 years—over 50 years, and he's got over 20 years of service. And the inference from the document that listed how much his annuity would be shows that there was an early retirement offer being made. What you're saying, I think—and correct me if I'm wrong, Mr. Kulinski—is that if someone is under investigation for misconduct and is subsequently found to have engaged in misconduct and is removed for that reason, then they're still entitled to their early retirement benefits or annuity, whatever, if they leave during the period of the investigation but prior to the removal action. Is that—? That's correct. That's your position? That's our position, and I've had many cases in the military where my clients retired from the military service while they were under investigation for administrative discharge. So you would say if he'd been removed on October the 10th of 1998— Then he wouldn't be entitled. Then he wouldn't be entitled. But we don't—do we know—I guess we don't have any documentation to tell us what this early retirement—when it kicked in. For instance, your client says that in October, he sends the letter, and he says, I request consideration. But there's no indication as to—I mean, maybe the agency was saying for the next six months or six months from now, you're eligible—you'll be eligible. We understand that the retirement window was, I believe, a three- or four-month period at most, ending on December 31st. So they had to retire before December 31st or they couldn't retire at all. And since he was eligible for their retirement, they made that offer to him. His letter, the 14th, though inartfully drafted, was an acceptance of that offer, and it would be, as far as we're concerned, October 14th is the date that he's retired. Would you like to save the remainder of your time? Yes, sir. All right. We'll hear from the government. Mr. White. Please, the Court. The MSPB's decision should be affirmed because there is substantial evidence which shows that Mr. Simons was not retired pursuant to the early-out opportunity that he attempted to get in the CIA, but in fact was fired for cause in January of 1999. Initially, I just want to point out that it's been conceded by Mr. Simons that there is no doubt that he's not entitled to immediate retirement under any of the other sections for CSRS and Section 8336. For example, he wasn't old enough or he didn't have the number of years of service necessary to retire under Section 8336a, b, or f. So this entire issue is whether or not he can essentially collaterally attack the CIA's decision to fire him for cause through this action challenging the OPM's denial of his request for immediate retirement through an early-out. Well, the question is, is it not, whether or not he was – the first question before we reach whether he accepted, whether there was an offer out there, whether indeed the CIA had an early-out offer out to all of the employees who were eligible and at the age and years of service requirement between the time of September or October and December of that year. Well, he says there is, Your Honor, but I think as you pointed out in questioning that earlier, one, he retired and was fired in 1999. So even if you were to assume that the October 14th letter was – even if you assume that he was correctly characterizing what the agency's plan was that, for example, that letter suggests that he claims that it was a period of early-out from October 1st, 98 through December 31st, 98. He was fired in 1999. Having not resigned and taken an early-out during that period, it really doesn't matter. For the purposes of OPM's determining how he was separated, he wasn't separated pursuant to an early-out opportunity. That window was closed. So regardless of whether the CIA – Let's assume hypothetically that the CIA had a notice and it says, if you meet the age and time of service requirement, you are automatically eligible and will receive an early-out retirement by December 31st. Let's assume hypothetically that he wrote back and he said, I accept. I want to retire. Please process me through. And then the agency does nothing. Doesn't he, under those circumstances, have a cause of action, have a right to go back and say, you offered me this, you promised me no ifs, ands, or buts. I accepted your offer. So retroactively, you have to implement it. I don't know if that's true, Your Honor. The reason I say that is that this is an offer which is approved for the CIA by the Office of Personnel Management. They provide the retirement window. This was an employee who claims that I was entitled otherwise, and to whatever extent that's true or not true is somewhat hampered by the lack of records. No, but my hypothetical assumes that that's all true. Let's assume there was an unconditional offer to a set of employees to which Mr. Simon belonged that said, anybody who comes and asks for it between this time period is automatically eligible to get under this early retirement program. And he indeed came forward and had a letter in which he said, I accept. So even if the agency, in fact, didn't effectuate his retirement in that period, wouldn't he prevail in this instance? Wouldn't he have a right to go back and demand that that be implemented? This is hypothetical. Well, I understand, Your Honor. It is hypothetical. And what normally you see in cases involving early retirement is the exact converse of this situation because the indicia that you usually see from the employee to indicate that they're accepting this is something which is very formal. It is ordinarily an agreement of some sort signed and dated in a formal manner by the employee. No, no, no, excuse me. My thought – maybe I wasn't clear. My hypothetical assumes that. Assumes that he responded in writing and said, I accept your offer, and he has a note. Assume that for purposes of the hypothetical. If he had such proof that he had indeed accepted this unconditional offer hypothetically, would he then be entitled to go back and enforce that? Probably not. And the reason I say that is because of the particular facts involving this particular agency. And OPM, which as this court has held in one earlier case, does presumably have the power to disagree or determine the facts regarding separation in a manner which may differ from that as being reported by the agency. It would seem that in the situation involving the CIA, whose determination that he was fired for cause is not reviewable by a board or really anywhere. Yeah, but that doesn't really answer the hypothetical, Mr. Wood. Again, Judge Prost is saying assume the facts that she gave, and you're sort of – I understand – Your Honor, I'm not trying to say by making this – I'm not trying to say he may not have some sort of a claim that in the ordinary course with other agencies might have been redressable by the board in an action of silence versus whatever employing agency it may be. And one of the interesting and I think important factors in this case is that you're dealing with an employing agency whose determination he was fired for criminal conduct is final. It can't be reviewed. No, no, I understand that, but he is saying – he says yes, I was eventually fired for misconduct, no question about that. But before I was fired, I accepted an offer that had been made to me of early retirement. Now, if that's – again, that's what I think Judge Prost is getting to in her hypothetical. What is the answer if those facts were to obtain? It's a difficult question, again, for the same reason that I'm just pointing out, which is that I'm not certain that it would be appropriate for OPM. Assuming these facts, Mr. Simons files an application for immediate retirement. Instead of saying on the application, as he does, I was separated in January 27, 1999, say he puts in that block for separation October 14, 1998. That was the date that I tried to accept the early out opportunity that was made available to people in my work component. I was otherwise eligible. I had the number of years. I had the number of years of service. When OPM gets that application, they send it to the CIA. The CIA completes the record of service, which is in the joint appendix here. When the CIA returns that record of service to OPM, it's going to say he was fired for cause in January of 1999, not in the early retirement window, which the Office of Personal Management had authorized us to retire. But what if you had a situation where it got back to OPM before he was fired and CIA said, here's his record of service, etc. And at that point, he had not yet been fired. I mean, you're referring to his October 14th. Yes. In that circumstance, where he hasn't been fired, he claims, I took this. Then the question that would arise is the question I think that you were questioning, Mr. Klemanski, about earlier, which is whether or not when you are under investigation, in fact, this October 14, 1998 request was made only a week after Mr. Simons was criminally indicted in the Eastern District of Virginia for these counts of child pornography. Is there something in the record that, well, let me ask you this, Mr. White. Mr. Klemanski said, I think at some point in his argument, and correct me if I'm wrong, he said that it's now undisputed that an offer was made. He said subsequently documents came to light or were furnished or whatever that shows, that reflects that an offer of early out was made to employees, certain employees, and Mr. Simons, leaving aside the misconduct issue, fell into that category. Is that correct? From what I'm aware of in the record before the MSPB, I'm not aware of the contours of whatever that offer was, but it wasn't challenged below by OPM, and it seems just from the documents that are produced, his request that he be approved, that there had been at least some documentation sent from, I suppose, retirement people within the CIA that had suggested that if he was approved for this, here's how we would calculate how you would be served. It suggests that there was, in fact, without seeing anything else, it would seem that there was, in fact, some early retirement offer that had been made. Whether it was technically covering an employee in Mr. Simons' position or not, I think it's unclear from the record. The letter that he sent, he claims to have sent, because it's unsigned. So you're saying all the record reflects is, what we should infer from the record is that there was, although you can't specify the details or precisely who would be covered, there was some kind of, the record suggests there was probably some kind of an early out offer on the table for a certain period. It seems that there was, that he had requested that, and that somebody in the CIA, and these documents are fragmentary, had at least in a tentative way tried to explain to him, well, if you're approved for this, this is what you're going to get. But at that time, it was very clear that he was on his way out. Had OPM been presented with that application for… Well, let me ask you about that. Is it the government's position that the statutory provision 8336D, the one that says that if you've been separated for misconduct, you can't qualify for this program, is it the government's view that at the time he was arguably, hypothetically eligible for early retirement prior to December 31st, that he was disqualified for that? Well, the statute specifically disqualifies those people who have been duly notified as what the statute says specifically, that they are going to be removed from misconduct. And when was he notified that he was going to be separated for misconduct? The record here, the record before this court is very sketchy on that point. His letter for one, in the very letter that he's referring to as his quote-unquote acceptance of an offer, he does mention the fact that he was under investigation, he's been put on leave without pay, and that he's got these legal issues and criminal charge. It again becomes kind of an issue of uniqueness because of involving the CIA. Again, the CIA not being an agency that's subject to Chapter 75 and doesn't have the obligation to do the notices and all of the other procedural requirements that agencies… I don't understand. When was he ultimately separated? Sometime in January? He was separated in January. He was on trial. So if the agency is coming in, if the government is coming in in this case and saying, and using as one of the arguments for why he shouldn't get his benefits here, that he arguably came under 8336D because he was removed from misconduct, and the statute says when you're notified that you're going to be removed from misconduct, doesn't the government have sort of burden to come up with the paperwork to demonstrate when he was indeed notified that he was going to be removed from misconduct? And if the only evidence of record shows the date he was removed and nothing prior to that, doesn't that kind of inure to the detriment of the government? No, Your Honor, and here's why. For one, if you have been removed for misconduct and you've been removed, there is no possibility that you can get early retirement under 8336D. That's out of the question. Where you have not been removed yet, but you've been notified that you are going to be removed from misconduct or absenteeism, you then cannot be entitled to early retirement through one of these agency offers. Through 8336D because of 8336D? Yes, because you've been notified. I understand what you're saying. Where, Mr. Wise, is the support for that? I mean, is there a statute or regulation or a case that says even if you have not been removed, if you are the subject of an investigation that could result in removal, you during that period cannot claim early retirement? I don't know if we've identified in the briefing any case that particularly addresses the question of whether your being under investigation satisfies that statute. Isn't that the critical point here, though? Well, it would be, but for the fact, as I've tried to start with, is that he is not entitled to early out retirement for no other reason than he was never officially retired during that period, never tried to retire himself, for example. What about his October 14 letter? He says, please consider me. Consider me. Consider me. It's not, Your Honor, I retire. I resign. He didn't resign. He was not separated during the early out period. And he didn't try to separate himself during the early out period, which is what you would have done if you felt that the agency was required to do this and that if you waited any longer until you were convicted, which is what happened in January. Well, let me ask you, you said there's no case, Mr. Wise. Is there a regulation? Well, the statute itself uses the phrase... You're talking about 8336D. 8336D, too, refers to this language of duly notified. Notified that you're going to be separated. That you're going to be separated. And what I'm trying to get at here is that he is arguing that although I've been indicted, I've been investigated, they've removed me from my job without pay, and that I'm waiting to be convicted before they fire me, that I have not been duly notified pursuant to this statute that I'm going to be removed involuntarily. And what I'm trying to get at with this is that in a circumstance involving the CIA that doesn't do that and is not required to do all of that, duly notified has to mean something else. So you're saying he was effectively on notice that he was going to be separated. Yes. And the CIA director fires people, and the procedural due process that's put in place through Chapter 75, the proposed removal notices and action on that, none of that stuff is applicable to the CIA. So to say that he hasn't received notice of this when he very well knew what was happening is really disregarding the facts as they existed. Thank you, Mr. White. I think your time has been exceeded. Mr. Klamaski. Just two short comments. One, they may not have to follow 5 CFR regulations for that, but they've got to follow the law. The CIA must follow the law. The law prompts this early retirement opportunity. The CIA asks for one. They notify the window. Mr. Simons was qualified for it. He requested it. They have to give it to him. Now, one of the things, whether he was removed for clause or what, somehow or other the CIA notified OPM that Mr. Simons resigned. He was not separated involuntarily because in the appendix on page 25, the last entry into his personnel record is resign. And that's what the CIA notified OPM. So he was not involuntarily separated. Somehow or other, Mr. Simons got the idea that maybe he was involuntarily separated. The CIA notified OPM that he resigned. We believe that the evidence... Is there a document showing an involuntary removal? Not in record. The CIA was notified of this case. We wanted the documents. They won't give it to us. They refused. They have to stand by the record as it is. And the record that OPM has is that he made his application. He was qualified for early retirement. He should have gotten it. The CIA should have done what it was supposed to do in its ministerial review, saying, yes, you meet the standards. You're out. Well, in the A.J.'s opinion, and we have a very deferential view of the A.J.'s opinion, particularly on factual questions, and I hope I'm looking at the right one. She says, does she not, that the appellant contends that although he was fired for cause, it was a pretext, blah, blah, blah. So shouldn't we take from that that it was not disputed in the record that he was fired for cause? It was his understanding. However, the documents that we did get from OPM indicate that he wasn't. He has no document from the CIA saying he's involuntarily separated. We have a document that says he actually resigned, and I think that's what he did. I think when he resigned, they said, no, no, we're going to involuntarily separate you. But in fact, they didn't, because that's what they notified OPM. And the matter should stand by the record as it is, because the CIA had all the opportunity to submit anything else it wanted, and it refused. Thank you. Thank you, Mr. Klimaski. The case will be taken under advisement.